FOWLIE, RESPONDENT, *v.* CRUSE ET AL., APPELLANTS.

(No. 3,756.)

(Submitted March 22, 1916. Decided April 12, 1916.)

[157 Pac. 958.]

*Slander—Repetition — Malice — Punitive Damages—Wealth of Defendant—Principal and Agent—Detectives—Declarations —Inadmissibility — Damages — Evidence — Privileged Communications — Waiver — Instructions—Good Character—Presumptions.*

Trial—Error—Rendered Harmless During Progress of.
 1.   Error committed during a trial which is rendered harmless during its progress, and therefore cannot prejudice the complaining party, is insufficient to impeach a judgment.

Slander—Repetition—Malice.
 2.   The repetition of slanderous words at different times is a sufficient showing of malice to entitle plaintiff to recover punitive damages.

Same—Punitive Damages—Wealth of Defendant.
 3.   The wealth and social standing of defendant charged with slander may be looked to by the jury in determining the punitive damages to be assessed.

Same—Principal and Agent—Declarations—Admissibility.
 4.   Declarations of the agent relating to the business for which he is employed, and explanatory of his acts, when proceeding within the scope of his authority, are deemed to be the declarations of the principal, and are competent evidence to bind the latter; otherwise not.

Same—Detectives—Inadmissibility—Declarations of Agent.
 5.   Defendant in an action for slander had employed detectives to obtain information relative to the whereabouts of articles of jewelry thought by him to have been stolen by plaintiff, a hotel-keeper. They, in conversations with plaintiff, repeated defendant's words in effect charging the former with theft. Plaintiff was permitted to testify to these declarations. *Held* prejudicial error, under the rule *supra.*

 [As to slanderous statements relative to personal or business affairs, see note in 104 Am. St. Rep. 143.]

Same—Damages—Evidence—Proper Rebuttal.
 6.   Plaintiff, a hotel-keeper, having introduced evidence to the effect that after the alleged slander, her daily income from her business had

decreased substantially, it was error to deny defendant the right to show in rebuttal that during the same time the business of other hotels of the same class likewise declined, as tending to establish that the loss suffered by plaintiff was properly attributable to causes foreign to the alleged wrong.

Same—Privileged Communications—Waiver.

7. By making the slanderous statement in the presence of a stranger, defendant removed the bar of privilege otherwise attending communications made by him to his agents only, which might have protected him, in the absence of actual malice. (Rev. Codes, sec. 3604.)

Same—Instructions.

8. Instruction to the jury that in order to find for plaintiff the proof must show that defendant uttered the words made the basis of an action for slander, or "substantially similar words," *held* not prejudicially erroneous.

Same—Instructions—Technical Terms—Proper Rule.

9. In formulating instructions, courts should employ terms and expressions which have been approved generally as technically correct.

Same—Instructions—Good Character—Presumptions.

10. An instruction that, in the absence of evidence to the contrary, the law presumes that the plaintiff in an action for slander possesses a good reputation, *held* proper under section 8026, Revised Codes.

*Appeal from District Court, Lewis and Clark County, in the First Judicial District; J. A. Matthews, Judge of the Fourteenth District, presiding.*

ACTION by Lizzie O'Connor Fowlie against Thomas Cruse. Judgment for plaintiff. Pending motion for new trial, defendant died, and Richard Cruse and others administrators with the will annexed, were substituted in his stead. From the judgment and an order denying said motion, defendants appeal. Reversed and remanded.

*Messrs. Walsh, Nolan & Scallon,* for Appellants, submitted a brief; *Mr. C. B. Nolan* argued the cause orally.

A demurrer was interposed to the complaint on the ground that two causes of action were improperly united, the first predicated on injuries to character, the second, as we contend, predicated on injuries to person. (*Paxton* v. *Woodward,* 31 Mont. 195, 107 Am. St. Rep. 416, 3 Ann. Cas. 546, 78 Pac. 215; *Lamb* v. *Harbaugh,* 105 Cal. 680, 39 Pac. 56; *Bowman* v. *Wohlke,* 166 Cal. 121, Ann. Cas. 1915B, 1011, 135 Pac. 37; *Green* v. *Davies,* 182 N. Y. 499, 3 Ann. Cas. 310, 75 N. E. 536; *De Wolfe* v. *Abraham,* 151 N. Y. 186, 45 N. E. 455; *Tandy* v. *Riley,* 26 Ky.

Law Rep. 993, 82 S. W. 1000; *Martin* v. *Mattison*, 8 Abb. Pr. (N. Y.) 3.) The improper uniting of two causes of action in the complaint is not waived by the defendant submitting to trial of issues where objection on this ground is previously raised by demurrer. (*Thelin* v. *Stewart*, 100 Cal. 372, 34 Pac. 861.)

The defendant could not be held liable for any repetition of the statement by others, even by an agent without proof that the agent or other person had instructions to repeat or republish alleged slander, or else that he was acting within the general scope of his authority. (*German Sav. Bank* v. *Fritz*, 135 Iowa, 44, 109 N. W. 1008.)

The alleged statement was privileged. (*Morton* v. *Knipe*, 128 App. Div. 94, 112 N. Y. Supp. 451, 453; *Railway Co.* v. *Brooks*, 69 Miss. 168, 30 Am. St. Rep. 528, 13 South. 847; *Taylor* v. *Chambers*, 2 Ga. App. 178, 58 S. E. 369; *Edwards* v. *Kevil*, 133 Ky. 392, 134 Am. St. Rep. 463, 28 L. R. A. (n. s.) 551, 118 S. W. 273; *Holmes* v. *Royal Fraternal Union*, 222 Mo. 556, 26 L. R. A. (n. s.) 1080, 121 S. W. 100; *Bohlinger* v. *Germania Life Ins. Co.*, 100 Ark. 477, Ann. Cas. 1913C, 613, 36 L. R. A. (n. s.) 449, 140 S. W. 257; *Nichols* v. *Eaton*, 110 Iowa, 509, 80 Am. St. Rep. 319, 47 L. R. A. 483, 81 N. W. 792; *Richardson* v. *Cooke*, 129 La. 365, 56 South. 318; *Briggs* v. *Brown*, 55 Fla. 417, 46 South. 325; *Hansen* v. *Hansen*, 126 Minn. 426, L. R. A. 1915A, 104, 148 N. W. 457; *Hoover* v. *Jordan*, 27 Colo. App. 515, 150 Pac. 333; *Adams* v. *Cameron*, 27 Cal. App. 625, 150 Pac. 1005, 151 Pac. 286.)

By an instruction the jury were told that the plaintiff might recover if the defendant had spoken the words charged in the complaint, "or substantially similar words." This is not correct law. It was necessary for the plaintiff to prove the exact words or words of exactly the same meaning. (*Sanford* v. *Gaddis*, 15 Ill. 228; *Ransom* v. *McCurley*, 140 Ill. 626, 31 N. E. 119; *Fox* v. *Vanderbeck*, 5 Cow. (N. Y.) 513.)

The question of malice in connection with a civil action for libel was exhaustively considered by the supreme court of Cali-

fornia in *Davis* v. *Hearst,* 160 Cal. 143, 116 Pac. 530. The
repetition of the statement to Keys and Garrity would also be
privileged, and would not prove malice. (*Hayden* v. *Has-
brouck,* 34 R. I. 556, 42 L. R. A. (n. s.) 1109, 84 Atl. 1087;
*Shinglemeyer* v. *Wright,* 124 Mich. 230, 50 L. R. A. 129, 82
N. W. 887.)

*Messrs. E. A.* and *Frank E. Carleton,* for Respondent, sub-
mitted a brief; *Mr. E. A. Carleton* argued the cause orally.

The following authorities support our contention that the
causes of action were properly joined in the complaint: *White
v. Cox,* 46 Cal. 169; *Brewer* v. *Temple,* 15 How. Pr. (N. Y.)
286; *Harris* v. *Avery,* 5 Kan. 146; *De Wolfe* v. *Abraham,* 6 App.
Div. 172, 39 N. Y. Supp. 1029; 23 Cyc. 414, 415; 1 Ency. Pl. &
Pr. 188.

Whatever an agent does in the course of his employment the
principal is liable for, if injury results, and, therefore, the acts
and declarations of the agents and representatives spoken and
done in the course of their employment are the acts and declara-
tions of the principal, and are just as competent and proper as
if the words were spoken or the acts done by the principal him-
self. The very method by which agency is proved supports
this contention. "Agency may be proved by circumstantial
evidence. Great latitude is allowed in the admission of testi-
mony tending to prove facts and circumstances from which the
existence of an agency may be inferred." (10 Ency. of Evi-
dence, 21.) Such testimony as to the admissions of the defend-
ant is a part of the *res gestae* in the case, and, hence, competent.
(*Lowry* v. *Harris,* 12 Minn. 255.)

Were the agents in this case general or special agents? Were
the statements made by them to plaintiff, to the effect that defend-
ant had uttered and published the defamatory words complained
of, made while they were in the pursuance of the work for which
defendant employed them? They were general agents within
the rules of law, and, being about their master's business, acting
within the apparent scope of their authority, the statements

were competent. The statements were made incident to their
employment. (*Maier* v. *Randolph,* 33 Kan. 340, 6 Pac. 625;
*Atchison, T. & S. F. R. Co.* v. *Randall,* 40 Kan. 421, 19 Pac.
783; *Voegeli* v. *Pickel Marble & Granite Co.,* 49 Mo. App. 643,
645; *Rounds* v. *Delaware L. & W. R. Co.,* 64 N. Y. 129, 21 Am.
Rep. 597; *Electric Power Co.* v. *Metropolitan Telep. etc. Co.,*
75 Hun (N. Y.), 68, 27 N. Y. Supp. 93; *Faber* v. *Missouri Pac.
Ry. Co.,* 116 Mo. 81, 20 L. R. A. 350, 22 S. W. 631; *Douglass* v.
*Stephens,* 18 Mo. 362; *Gilmartin* v. *Mayor etc. of New York,* 55
Barb. (N. Y.) 239; *Eckert* v. *St. Louis Transfer Co.,* 2 Mo. App.
36; *New Orleans etc. R. Co.* v. *Bailey,* 40 Miss. 395.) The ques-
tion whether or not the employee was within the scope of his
employment is for the jury. (*Hoffman* v. *New York etc. R. Co.,*
46 N. Y. Super. Ct., 14 Jones & S. 526; *Rounds* v. *Delaware L.
& W. R. Co.,* 64 N. Y. 129, 21 Am. Rep. 597; *Brunner* v. *Ameri-
can Tel. & Tel. Co.,* 160 Pa. St. 300, 28 Atl. 690.) Upon this
question of whether he was so acting within the scope of his
authority, the finding of the jury is conclusive. (*Schulte* v.
*Holliday,* 54 Mich. 73, 19 N. W. 752.)

Stress is laid upon the fact that the defendant did not ex-
pressly authorize the statements and declarations of these agents.
It is wholly immaterial that he did not do so. "Even though
the making of statements or declarations may not have been
expressly authorized, they may be authorized by implication,
because they are the natural and ordinary incidents of the posi-
tion which the agent occupies." (2 Mechem on Agency, 2d ed.,
sec. 1780; *Hupfer* v. *National Distilling Co.,* 119 Wis. 417, 96
N. W. 809.) All the acts and declarations of the agents with
reference to the statement that the defendant had accused plain-
tiff of stealing the jewelry were competent as *res gestae,* and
they were also competent as original evidence, being the acts
and declarations of the defendant himself.

The statements were not privileged even as to the witness
Keys. Falsely charging the commission of a crime to anyone
unnecessarily is never privileged. (*People* v. *Detroit P. etc.
Co.,* 54 Mich. 457, 20 N. W. 528; *Pierce* v. *Oard,* 23 Neb. 828,

37 N. W. 677; *Lynch* v. *Febiger,* 39 La. Ann. 336, 1 South. 690, 692n; *Rainbow* v. *Benson,* 71 Iowa, 301, 32 N. W. 352; *Bacon* v. *Michigan Cent. R. Co.,* 66 Mich. 166, 33 N. W. 181.) "Whenever a person deliberately adopts a method of communication which gives unnecessary publicity to statements defamatory of another, the jury will be justified in finding malice." (Newell on Slander and Libel, 2d ed., 531.)

Where the words charged in the declaration imputed lewdness and adultery to the plaintiff, and the words proved established that and no more or less, not by proof of equivalent words, but by proving the substance of the words spoken, it was held to be sufficient though the words were not proved precisely as charged in the declaration. (See *Thomas* v. *Fischer,* 71 Ill. 576; *Crotty* v. *Morrissey,* 40 Ill. 477; *Baker* v. *Young,* 44 Ill. 42, 92 Am. Dec. 149; *Dufresne* v. *Weise,* 46 Wis. 290, 1 N. W. 59; *Boldt* v. *Budwig,* 19 Neb. 739, 28 N. W. 280; *Posnett* v. *Marble,* 62 Vt. 481, 22 Am. St. Rep. 126, 11 L. R. A. 162, 20 Atl. 813.)

In such cases as this express malice, entitling the plaintiff to an award of exemplary damages, may be inferred from the circumstances of the particular case. (*Templeton* v. *Graves,* 59 Wis. 95, 17 N. W. 672; *Bergmann* v. *Jones,* 94 N. Y. 51.) Malice is inferred from failure to make suitable and reasonable inquiries. (25 Cyc. 51.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Plaintiff herein alleges as a first ground of recovery that when the wrong complained of was committed, she had, for six years, been conducting the Fowlie Hotel in the city of Helena; that she had been well and favorably known to the traveling public, bearing a good name for honesty and uprightness; that Thomas Cruse, the defendant, was one of the most wealthy and influential citizens in the city of Helena; that Mary Margaret Cotter, his daughter, lately deceased, was the owner of a large amount of valuable jewelry; that she was an intimate friend of plaintiff and had been in the habit of visiting her at the Fowlie Hotel;

that because of plaintiff's kindness to her she had given plaintiff an imitation pearl necklace worth about $5, and also two sets of earrings worth about $4; that about the same time she had left with plaintiff other jewelry of the value of $10; that in the early part of October, 1913, the said Cruse, referring to the jewelry which had belonged to his daughter, falsely, wickedly and maliciously, in the presence of J. N. Keys and other persons, spoke and published of and concerning the plaintiff these words, "I knew Mrs. Fowlie had stolen the jewelry"; that by the speaking of these words the said Cruse injured the plaintiff's good name and fame, greatly impairing her hotel business, in that many persons, because of their belief in the truth of the words, withdrew their patronage.

Repeating the matters alleged by way of inducement in the first cause of action, the plaintiff, as a second ground of recovery, alleges that in September, 1913, the said Cruse illegally and maliciously, intending to injure the plaintiff in her good name and character which she had theretofore borne as a hotel proprietress, initiated and undertook a campaign against her, by which he endeavored, by artifice, intimidation and intrigue, and through the agency of detectives, to compel her to give up the jewelry; that for the more ready accomplishment of this purpose, these agents went to the hotel of plaintiff and by the aforesaid means, and in pursuance of their unlawful purpose, frequently suggested that plaintiff had stolen the said jewelry; that all these acts caused the plaintiff much worry, mental pain, anguish and suffering, and greatly impaired her business, for that many persons, learning of the aforesaid malicious acts, ceased to patronize plaintiff, so that she was brought into hatred, contempt, and public infamy; that to further said malicious design and purpose, in September, 1913, the said Cruse assembled a mob of detectives at the courthouse in the city of Helena to make an entrance into plaintiff's hotel, to intimidate, frighten and overawe her, and thereby to compel her to surrender possession of the jewelry; and that, hearing of this, she became greatly frightened and alarmed, thereby being caused to suffer great

pain, anguish and humiliation. Judgment is demanded upon each cause of action for the sum of $25,000.

To the first cause of action the defendant demurred on the ground of uncertainty, and to the complaint as a whole on the ground that there were improperly joined therein a cause of action for injury to character, and one for injury to the person. The demurrer having been overruled, the defendant answered, denying that the slanderous words were spoken and that defendant had done any of the acts alleged in the second cause of action. The trial resulted in a verdict and judgment for plaintiff on the first cause of action for $7,500, the jury finding for the defendant on the second. Pending his motion for new trial, defendant Cruse died, and the persons who are now defendants, being the executors of his will, were substituted in his stead. The cause is before this court on appeals from the judgment and from an order denying a new trial. For convenience, Cruse will be referred to as the defendant.

1. It is contended that the court erred in overruling the demurrer to the complaint on the second ground thereof. As the [1] judgment must be reversed for reasons hereafter stated, it will not be necessary to classify the second cause of action, or to consider the contention made by counsel. By failing to move for a new trial and to prosecute an appeal, plaintiff elected to abide the result of the trial. So far as we can ascertain from the record by the aid of counsel's argument, the rulings of the court on questions of evidence offered in support of the second cause of action did not, in any wise, prejudice defendant during the trial under the first. In view of this condition, we think the error, if error it was, was harmless. While it is true, as counsel contend, a defendant does not waive the error in such a ruling by submitting to a trial on the merits after he has interposed his objection by demurrer, it does not follow that he is entitled to impeach the judgment because of the error, when by the course of events during the trial it becomes harmless. The second cause of action was by the verdict of the jury eliminated from the case; and, as it is not made apparent

that prejudice was wrought in the final result, the contention must be overruled. (Rev. Codes, sec. 6593; *Blankenship* v. *Decker,* 34 Mont. 292, 85 Pac. 1035; *Vreeland* v. *Edens,* 35 Mont. 413, 89 Pac. 735.)

2. It is argued with much earnestness that the evidence is insufficient to justify the verdict. The trial in the district court consumed fourteen days. The testimony of the witnesses in narrative form covers more than 600 pages. This is accounted for in part by the fact that there had been litigation between defendant and some of the witnesses in this case for alleged services performed by them at his instance as detectives, in an effort to gain information as to the whereabouts of some of Mrs. Cotter's jewels, which they represented to be of the value of from $40,000 to $60,000. Some of the principal witnesses had testified during the course of this litigation. The depositions of some of them had been taken by way of precaution for use in the case at bar. On both occasions the witnesses were examined and cross-examined at great length. Much of the testimony theretofore given found its way into the record through the efforts of counsel for defendant to impeach them, by showing contradictory and inconsistent statements touching the utterance of the slanderous words imputed to the defendant. Again, counsel on both sides went to unusual lengths in examining and cross-examining them, not only as to matters relevant and material, but also as to matters of no evidentiary value whatever. It is surprising that the patience of the trial judge was not taxed to the breaking point early during the course of the proceedings. We shall not undertake to examine these narratives and sift from the mass of them those parts which the jury must have accepted as disclosing truthfully what was said and done by the actors during the greater part of the year 1913, covered by the alleged investigations of the witnesses.

The defendant was a man of wealth, and prior to his death had been engaged in banking and other business in Helena and other parts of Montana. His daughter, Mrs. Cotter, was the owner of a number of articles of valuable jewelry which she had

deposited with various persons as security for loans or for safe-keeping. In May, 1913, she was absent from the state. The witness Mrs. Stevens having heard from the witness Keys, as she said, that Mrs. Cotter had left some of her jewelry, sup-posed to be worth many thousands of dollars, with some person in Helena, went to defendant and informed him of what she had heard, and offered to introduce him to the witness Keys, who could give him definite information on the subject. Hav-ing gained his permission to do so, she took Keys to defendant's house and introduced him. Keys denied having any definite information, but professed to be able to find a man who could give it to defendant. The latter agreed to pay him for the information. He also agreed to stand responsible for anything that was right for the purpose of securing witnesses necessary to enable him to gain possession of the jewelry. This witness and Mrs. Stevens paid several other visits to the defendant's home, during which the whereabouts of the jewelry, as well as the character and value of it, was discussed. On one oc-casion the witness Garrity, who had joined Keys in his investiga-tions, went with them. On the occasion of one of these visits, according to their story, upon being informed that plaintiff had in her possession several articles of jewelry belonging to Mrs. Cotter, including those described in the complaint, de-fendant made the statement to them, first, that he believed that plaintiff had stolen the articles, and then, as alleged in the com-plaint, that he knew that she had stolen them. The latter state-ment was thereafter repeated in their presence and that of Garrity. The two first were the only witnesses who testified to hearing the slanderous statements; Garrity denying that he was present when any of them were made. There are many discrepancies and inconsistencies in the statements of these witnesses as to the particulars of the several conversations,—so many, indeed, that one's credulity is taxed to the utmost limit to accept them as true.

So, also, there were contradictory and inconsistent statements made by some of the other witnesses, rendering it questionable

whether they spoke the truth. Even so, it was the exclusive province of the jury to ascertain whether they did, notwithstanding these contradictions and inconsistencies. Such being the condition, it is not within the province of this court to say, as a matter of law, that the jury, and the trial judge who reviewed their findings on the motion for a new trial, reached a conclusion wholly without foundation in the evidence. We must concede that the evidence is unsatisfactory—so much so that if it had been submitted to us in the first instance, we should have been inclined to reach a different conclusion—yet this attitude of mind does not authorize us to disregard the rule applicable to all cases in which the verdict is based upon conflicting evidence, *viz.*, that on appeal to this court the finding of the jury must be accepted as conclusive. On the whole case, we cannot say that the jury were not justified in finding that the slanderous words were uttered as alleged, and that they were false and unprivileged. Hence a *prima facie* case was made under the statute (Rev. Codes, sec. 3603, subd. 1), which the defendant was bound to meet and rebut with his proofs. It does not follow that the jury were wrong in refusing to accept the denial upon which the defendant rested his defense as conclusive. There was also evidence sufficient to justify submission to the jury of the question whether the slanderous [2, 3] words were prompted by malice, and hence whether the plaintiff was entitled to recover punitive damages. This was supplied by the repetition of the charge against the plaintiff at different times subsequent to the first publication, or in the conversation with Keys and Mrs. Stevens, and by the wealth and social standing of defendant. (*Downs* v. *Cassidy,* 47 Mont. 471, Ann. Cas. 1915B, 1155, 133 Pac. 106.)

3. During his investigations in his effort to ascertain who had possession of the articles in question, Keys associated with himself the witnesses Roberts and Chatfield; he also sought the assistance of Duncan, the sheriff of Lewis and Clark county. Later the witness Lechner, a priest of the Catholic church, took part in the investigation. It is questionable whether he had

authority of any kind from the defendant; he certainly had no authority from Keys; he never had any communication with the defendant. He stated that he acted solely through motives of gratitude toward the defendant because he had been a very liberal contributor to the church. Assuming to act for the defendant, he employed John Murphy, a detective, to aid him in gaining information as to the whereabouts of the jewelry. Still later the witness Carroll was authorized by a written order from the defendant to take possession from the plaintiff. Meanwhile, and until the jewelry was finally given up by the plaintiff during the course of litigation touching the probate of Mrs. Cotter's will, it was supposed to be of great value. At different times the plaintiff submitted to interviews by the persons named, other than Lechner. To some of them she exhibited the jewelry; to others she refused to exhibit it. She always claimed that the necklace and earrings had been given to her by Mrs. Cotter. The other articles she expressed herself as ready at any time to surrender to Mrs. Cotter upon demand, and, after her death, to any person authorized by law to demand them. During the trial Keys was permitted to testify, over defendant's objection, that in one of these interviews plaintiff asked Garrity if defendant had said that she had stolen the property, and that Garrity replied, "These are the very words that he used." Chatfield, on the solicitation of Roberts, went to the hotel to see the jewelry. He was permitted to testify that plaintiff told him that she was accused of stealing it, and that she thereupon said to him that it was the first time in her life that she had been accused of stealing. In a conversation between plaintiff and Duncan, plaintiff asked him if the defendant charged her with stealing the jewelry. Duncan replied, "Yes." Miss Fowlie, the daughter of the plaintiff, and Mrs. Howard, who heard the conversation, were permitted to rehearse it to the jury. Plaintiff testified to similar declarations made to her by Murphy. She was permitted to give other testimony of the same character. The contention is made that the action of the court in admitting this evidence was prejudicial error.

This contention, we think, should be sustained. The theory of the court was that, inasmuch as the witnesses were ostensibly the agents of the defendant to ascertain the whereabouts of the articles in question, any declarations made by them, or any of them, during the performance of their service were within the apparent scope of the employment, and were provable as the declarations of the defendant himself.

That for wrongs committed by the agent while acting within [4, 5] the scope of his authority, the principal is liable there can be no question. The rule is too well settled to require the citation of authority in support of it. It is also a rule, equally well settled, that the declarations of the agent relating to the business for which he is employed, and explanatory of his acts, when proceeding within the scope of his authority, are deemed to be the declarations of the principal, and are competent evidence to bind the principal. (*Callahan* v. *Chicago, B. & Q. Ry. Co.,* 47 Mont. 401, and cases cited, 47 L. R. A. (n. s.) 587, 133 Pac. 687.) It is not sufficient, however, that the particular declaration was made by the agent. It must have been made in connection with the discharge of the duty which he has been employed to perform and explanatory of it; and, though it may assume the form of narrative, yet if it is naturally and spontaneously prompted by the act itself, or naturally incident to it, it becomes a part of it and is competent. Now, accepting the testimony of Keys and Stevens as to the purpose of Keys' employment (their testimony is all there is to which we may look to ascertain the scope of Keys' duty), and, assuming that he was authorized to employ Duncan, Garrity, Roberts and Chatfield to assist him in the performance of it, we find that their employment was only to obtain information as to who was in possession of the jewelry and the character of the possession. None of them testified that he was employed to demand possession, Carroll admittedly being the only one who was authorized to make such a demand. If all of the declarants be regarded agents of the defendant for the purpose stated by Keys, none of their declarations were provable under the rule.

None of them were charges made by the agents, but were all reports to plaintiff as to what the defendant himself had said at some time prior to the interviews in which they were repeated to her. The statement of Garrity was drawn from him by the inquiry of plaintiff, and was not induced by anything which Keys or Garrity were then engaged in doing. It was a mere hearsay repetition of a past event. The statement of Chatfield was a rehearsal of plaintiff's own statement that she heard of the slander, and her expression of feeling on the subject. Duncan's statement falls into the same category with that of Keys, and the declarations of the other witnesses disclosed to the jury in the same way. Tested by the rule above referred to, they were not the statements of defendant, nor were they uttered under circumstances such as to render them confirmatory of plaintiff's own story under either cause of action. They were doubtless regarded by the jury as confirmatory of the story told by Keys and Stevens as to what occurred in their interview with the defendant when, as they said, defendant uttered the slanderous words charged. Whether defendant uttered the slander or not, he did not employ the witnesses to repeat it; hence they were solely responsible for their repetition and for such injury as may have resulted therefrom, if indeed they could have any injurious result. (Newell on Slander and Libel, 3d ed., 300, sec. 257; Odgers on Libel and Slander, 5th ed., 177.) The error was obviously prejudicial, and because of it the defendant is entitled to a new trial.

Evidence was offered by the plaintiff, and admitted without [6] objection, which tended to show that during the latter part of 1913 and the early months of 1914, the daily income from her business decreased substantially in amount. This was supplemented by plaintiff's books, a transcript from which was introduced in evidence. In rebuttal, defendant offered evidence to the effect that during the same months the business of other hotels of the same class showed a similar decline. This was excluded upon objection by plaintiff that the books of these hotels were the best evidence. This was error. It was competent to

show by anyone who had knowledge on the subject what the general condition of the business was, as tending to establish the fact that the loss suffered by the plaintiff was properly attributable to causes wholly foreign to the alleged wrong of the defendant.

4. It is contended that the words, if uttered by the defendant, were privileged, in that they were communicated only to the [7] agents, and that proof of actual malice was necessary to make out a case under the statute. (Rev. Codes, sec. 3604.) Without stopping to consider the question whether, if the statements had been made to Keys and Garrity only, they would have been privileged, but assuming that they would have been, the defendant himself removed the bar of privilege by making the statement in the presence and hearing of Mrs. Stevens, who was not employed by him for any purpose. So far as she was concerned, she was a stranger. Besides this, the subsequent repetitions of the charge in the presence of this latter witness was proof tending to show actual malice. (*Downs* v. *Cassidy, supra.*) The case of *Cooper* v. *Romney,* 49 Mont. 119, Ann. Cas. 1916A, 596, 141 Pac. 289, is not in point. What was said therein had reference to a publication *prima facie* privileged.

These remarks incidentally dispose of the contention that the court erred in submitting certain instructions to the jury on the subject of malice, and in refusing others requested by defendant.

5. Error is assigned upon the giving of the following instruction: "The court instructs the jury that before the plaintiff [8] is entitled to recover any verdict in this case, she must prove by a preponderance of the evidence that the defendant uttered and spoke of and concerning the plaintiff the words charged in the complaint, or substantially similar words, and that such words were spoken by the defendant in the presence of or hearing of some person or persons other than the plaintiff." The criticism of it is that the expression, "substantially similar words," does not embody a correct statement of the law. There is no question on the evidence but that if the defendant uttered

any slander at all, it was expressed in the words alleged in the complaint. Therefore the jury could not have found that other similar words were used. This being so, the instruction as given could not have prejudiced the defendant. The rule recognized by the authorities is that material words essential to make out the imputation charged must be proved substantially as alleged. (Newell on Slander and Libel, 3d ed., sec. 963.) Under the statute, a variance is not to be deemed material unless it has actually misled the adverse party to his prejudice. (Rev. Codes, sec. 6585.) This provision applies to this class of cases as well as to all others. Under the rule embodied in it, proof of similar words which in their scope and meaning make the same imputation as the words alleged ought to be deemed sufficient. If this is so, the instruction could not have resulted in prejudice. In legal effect, the expression employed by the court imports the same idea as the expression ''substantially the same.'' In formulating instructions, however, it [9] is always advisable to employ terms and expressions which have been approved generally by the courts as technically accurate.

6. Error is assigned upon the giving of this instruction: ''You [10] are instructed that the law presumes, in the absence of evidence to the contrary, that plaintiff possesses a good character and reputation.'' There was no error. On this subject Mr. Newell says: ''The law presumes the character of the plaintiff to be good until it is attacked, and he can safely rest upon that presumption. As long as it is not assailed, there is no comparative degree of good, better, best in his character. * * * But the general rule has reference only to cases where reputation is not a material issue, or where it has not been attacked. The reason for it is in the absence of any usefulness in proving that which the law already assumes.'' (Newell on Slander and Libel, 3d ed., sec. 933.) The rule thus stated is established by statute in this state. (Rev. Codes, sec. 8026.) This being so, it cannot be error to so instruct the jury.

We have not undertaken to notice all of the fifty-four assignments of error. The foregoing suggestions will, we think, be sufficient to guide the court at the next trial.

The judgment and order are reversed and the cause is remanded for a new trial upon the first cause of action.

*Reversed and remanded.*

MR. JUSTICE SANNER and MR. JUSTICE HOLLOWAY concur.