'Argued September 24, decided October 7, 1913.'

# FIELD *v.* NORTHWEST STEEL CO.*

(135 Pac. 320.)

**Master and Servant—Injuries to Servant—Safe Appliances.**

1. In a personal injury action by a servant hurt by a pneumatic riveter, the master must be held to have notice of the defects in the riveter, where the foreman in charge of the work, with power to employ, discharge and direct men in their movements, had actual knowledge of the defect.

**Master and Servant—Injury to Servant—Proximate Cause—Complaint.**

2. In a personal injury action by a servant, where the complaint alleged that he was given a defective pneumatic riveter, and that while he was getting a drink of water, the foreman in charge used the riveter, manipulating it in such a manner that the plunger was permitted to fall out of place, by reason of a defective spring, and that upon the servant's return the foreman in attempting to readjust the machine negligently turned on the air, so that the plunger was expelled, striking the servant on the forehead and fracturing his skull, a recovery cannot be defeated on the ground that, even admitting the spring was weak to the extent of constituting negligence, it was not the proximate cause of the accident; the servant counting also upon the negligence of the foreman in turning on the air.

**Master and Servant—Injuries to Servant—Negligence of Fellow-servants.**

3. Where a servant suffers an injury by the negligence of another servant who is discharging a duty which the master owes him, the master is liable without regard to the rank of the negligent servant, but is not liable where the servant is acting as a mere operator, this being true regardless of his rank; and consequently where the foreman in charge of certain work was attempting to repair the pneumatic riveter used by plaintiff and in doing so negligently injured plaintiff, the master is liable even though the foreman had been using the riveter as an operative only a few minutes before.

**Master and Servant—Appliances—Delegation of Duties.**

4. The duty of a master to furnish his servant with reasonably safe appliances is nondelegable.

---

*The general question of knowledge as an element of employer's liability is treated in an elaborate note in 41 L. R. A. 33.

The subject of vice-principalship considered with reference to rank of superior servant is treated in an extensive note in 51 L. R. A. 513.

As to the delegation of master's duty as to place and appliances, see note in 54 L. R. A. 63.

As to who is vice-principal, see note in 75 Am. St. Rep. 584.

As to the liability of an employer for injuries to employees from defective machinery or appliances, see note in 98 Am. St. Rep. 289.

REPORTER.

Master and Servant—Injuries to Servant—Actions—Jury Question.
   5. In an action by a servant injured by a pneumatic riveter, which was being repaired by the foreman, the question of the foreman's negligence *held,* under the evidence, for the jury.

Damages—Pleading—Evidence.
   6. In a personal injury action, where the complaint alleged that plaintiff's skull was fractured, and that as a result of the injury he was caused to suffer and did suffer grievous mental, physical, bodily and nervous pain, evidence of injuries to the optic nerve is admissible even though impairment of eyesight was not pleaded.

From Multnomah: HENRY E. McGINN, Judge.

Department 1.    Statement by MR. JUSTICE BURNETT.

The plaintiff, Albert Field, brings this action to recover damages for injuries which he suffered while in the employ of the defendant, Northwest Steel Company, a corporation, as an operator of a pneumatic riveting hammer. The parts of the complaint essential for a determination of the questions involved are as follows: "At the time and place above named, this plaintiff was under the direction and control, and subject to the orders and commands of Jesse Lilly, a foreman of said defendant corporation, who supervised the machinery with which plaintiff worked, as well as directed plaintiff in and about his work and also directed the time, place, manner and method of work in which plaintiff was required to discharge his duties. The said defendant, acting through its said foreman, furnished to this plaintiff a tool or implement with which to work which was defective, and of the defective character thereof the defendant well knew prior to the happening of the injuries to plaintiff; that the said foreman, Jesse Lilly, at the time and place aforesaid, while plaintiff had momentarily ceased work and was getting a drink of water, attempted to operate said machine, and on cessation of operation by said foreman, the said foreman carelessly and negligently so manipulated and handled the said defective machine

that the spring which is a part and parcel of said machine, and which holds the inner machinery of the hammer in place, was permitted to and did drop and fall out of place, and that the said machine with which this plaintiff was required to labor was defective in that the said spring was loose, whereas, in an ordinary machine, made and intended for the work which plaintiff was required to do with the defective machine stated, such spring is fastened tight and will not fall out; that the said foreman thereupon attempted to readjust the parts of said machine, and turned the automatic machine upside down in such a manner that a certain lever, which is a part thereof, came in contact with the floor, and that such lever is also used in turning on and off the current of air so operating such plunger; that while engaged in such work, the said foreman, carelessly, negligently and recklessly, and with disregard for the safety of this plaintiff, so manipulated and operated said machine while this lever or handle which controlled the air current was resting upon the floor, that he threw on the pneumatic pressure, or threw said machine in gear for operation while the said plunger was in position to be and was affected thereby, and instantly the said plunger was expelled from the nozzle or barrel of such machine with great force and violence, and the said plunger struck this plaintiff on the right side of the forehead with great force and violence, thereby crushing plaintiff's skull.''

These quoted allegations are denied by the answer. That pleading alleges contributory negligence of the plaintiff, the negligence of a fellow-servant, and the assumption of risk by the plaintiff, all of which is denied by the reply. A jury trial resulted in a verdict for the plaintiff and from the ensuing judgment the defendant appeals.                    AFFIRMED.

For appellant there was a brief over the names of
*Mr. F. J. Lonergan* and *Griffith, Leiter & Allen,* with
an oral argument by *Mr. Lonergan.*

For respondent there was a brief over the names of
*Mr. Isham N. Smith, Mr. L. E. Huntsman* and *Mr.
John F. Logan,* with oral arguments by *Mr. Smith* and
*Mr. Huntsman.*

MR. JUSTICE BURNETT delivered the opinion of the
court.

The pneumatic hammer with which the plaintiff was
working may be described for the purposes of this
opinion as follows: Inside a double walled tube is a
steel rod called a plunger, one inch in diameter, about
four inches long, and weighing about one pound. In
front of this plunger is another movable part called
a die, having a stem 1 3/16 inches in diameter and 2½
inches in length, and a head 1¾ inches in diameter
and in length; the whole die weighing about two
pounds. The plunger works easily in a portion of the
tube slightly larger than its own diameter. The part
of the tube in which the stem of the die works is some-
what larger than the chamber for the plunger. The
head of the die projects beyond the muzzle of the tube.
In the end of the head is a semi-spherical recess de-
signed to fit upon the end of the rivet when the ma-
chine is in action. A spring in the form of a sleeve
reaching about three quarters of the way around the
tube is used for the purpose of retaining the plunger
and die within the tube. The base of this spring is
fashioned into a lip curving inward, which fits into a
slot around the muzzle of the instrument, while the
upper edge of the spring is so formed as to engage a
shallow slot around the head of the die, allowing about
a half-inch play of the die forward and back. The

67 Or.—9

sole design of this spring is to retain the plunger and die in place when there is no air being introduced into the chamber. It is stated in the record that no spring would be strong enough to hold in the die and plunger against the pressure of the air ordinarily maintained. In operation compressed air is admitted at the rear end of the tube, and acting upon the plunger forces it against the die held hard against the rivet, and the rebound releases the air, which escapes through various apertures leading into the outside tube and thence through other openings into the outer air. The rebound of the plunger causes it to again meet the pressure of the air, and so the operation of riveting is continued. The admission of the air into the chamber is controlled by a valve operated by a projecting lever at the breach of the instrument. The base of the instrument may be likened to the handle of an ordinary handsaw and the lever, which may be conveniently termed a trigger, works in a slot on the outside of the grip of the saw, through the interior of which the air passes.

The plaintiff's testimony tended to show that on the occasion referred to he was operating the hammer. He laid it down and went to get a drink of water. At this juncture the foreman took up the hammer and riveted a few bolts. When he had finished he lowered the muzzle of the tool, and, owing to the weakness of the spring, the plunger and die fell out upon the floor, carrying with them the spring itself. By this time the plaintiff had returned. The foreman stooped down, resting the butt of the tool on the floor, picked up the plunger, and dropped it into place. The plaintiff about the same time took up the spring and was engaged in pressing it together so as to make it fit around the tube more closely. While the foreman was in the act of picking up the die, in some way he touched the trigger which admitted the air to the chamber.

The plunger, unhindered even by the die or spring, was expelled with such violence that, striking the plaintiff on the head, it fractured his skull.

1. It is first contended by the defendant that the plaintiff failed to prove any knowledge on the part of the defendant, either actual or constructive, that the spring was weak or defective (citing *Manning* v. *Portland Shipbuilding Co.*, 52 Or. 101 [96 Pac. 545]). It is alleged, and the testimony strongly tends to prove, that the foreman was in charge of the work, with power to employ and discharge men and to direct their movements and the operation of the machinery. For the purposes of knowing the condition of the machinery he therefore stood in the place of the master, and he had actual knowledge that the spring was so weak that it would not retain the die and plunger in place when the gun, as it is called, was lowered, muzzle down. Under these circumstances the knowledge of the foreman is imputed to the master and binds the latter: *Rogers* v. *Portland Lumber Co.*, 54 Or. 387, 394 (102 Pac. 601, 103 Pac. 514).

2-5. It was further contended that, "even admitting that the spring was weak to the extent of constituting negligence on defendant's part, it was not the proximate cause of the accident." The defendant argues that the weakness of the spring as a factor in the event had spent itself, that that portion of the instrument had become inert, and that, as the spring itself was in the hands of the plaintiff at the moment the accident happened, it could not have brought about the result which happened. The argument was skillfully pressed, and would be well chosen were that all of the complaint. We must remember, however, that the plaintiff counts upon the fact that the foreman attempted to readjust the parts of the machine, and in so doing so negligently operated the contrivance that

he applied the air to the plunger, causing it to be projected against the plaintiff's head. But the defendant contends that the foreman at the time of the accident was a mere operative, performing details of the work, for whose negligence the defendant is not liable. It is laid down in *Mast* v. *Kern,* 34 Or. 247, 250 (54 Pac. 950, 951, 75 Am. St. Rep. 580), that "the rule, and the one now unquestionably established and supported by the great weight of authority both in this country and in England, is that the liability of the master depends upon the character of the act in the performance of which the injury arises, and not the grade or rank of the negligent employee. If the act is one pertaining to the duty the master owes to his servant, he is responsible for the manner of its performance, without regard to the rank of the servant or employee to whom it is intrusted; but, if it is one pertaining only to the duty of an operative, the employee performing it is a fellow-servant with his colaborers, whatever his rank, for whose negligence the master is not liable (citing many authorities)."

Bearing in mind, also, that by a thoroughly established rule it is the nondelegable duty of the master to furnish the employee with reasonably safe tools with which to work, we observe that at the time the accident happened, the foreman was engaged in preparing a tool for the use of the plaintiff. For the reason stated, the instrument had become unfit for use. The recital of the weakness of the spring and the resulting dispersion of the parts of the hammer was, in a sense, matter of inducement. The situation for which the master is responsible commenced when its representative, the foreman, began to assemble the pieces so as to render the hammer available for the work in hand. In other words, the foreman was engaged at the moment in preparing for the plaintiff a suitable and

proper tool for the service in which he was engaged. The overseer thus occupied the place of the master, and was at the time performing a duty owing by the master to the servant. In the performance of this duty the master's representative so conducted himself and so manipulated the appliance that the injury resulted to the plaintiff. The harm did not happen during the ordinary operation of the hammer, so as to make it the act of a fellow-servant, but while that operation was suspended, calling into play the inherent duty of the master already mentioned. The testimony on that point was sufficient to take the case to the jury, and the motions for nonsuit and a directed verdict were properly overruled.

6. It is finally contended that it was error to permit the plaintiff to testify that his eyesight was impaired, the same not having been pleaded in the complaint (citing *Maynard* v. *Oregon R. R. Co.*, 43 Or. 63 [72 Pac. 590]). The complaint alleges generally as the result of the injury that the plaintiff "was caused to suffer, did suffer, and now suffers grievous mental, physical, bodily and nervous pain and anguish." The case of *Maynard* v. *Oregon R. R. Co.*, 43 Or. 63 (72 Pac. 590), teaches that when the injuries are species of hurt which might naturally arise from the wrongs complained of, they may be given in evidence under the general allegations, in terms like those used in the complaint here. It is not unreasonable to suppose that a fracture of the skull exposing the brain would result naturally and probably in pain of the optic nerve, with attendant impairment of the eyesight. In that respect the complaint might have been amenable to a motion to make it more definite and certain respecting the particular results attributed to the injury, but after verdict the defect is negligible. We are not prepared to say that it was error to admit testimony of impaired

eyesight. As against the faults argued in the brief, the judgment should be affirmed.          AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE RAMSEY concur.