PALMER, Respondent, *v.* RIEK, Appellant.

(No. 7,829.)

(Submitted February 6, 1939. Decided March 13, 1939.)

[88 Pac. (2d) 16.]

Mr. *Samuel M. Bowe,* of the Bar of Grant's Pass, Oregon, for Appellant, submitted a brief; Mr. *H. B. Landoe,* of Counsel, argued the cause orally.

110

*Mr. J. N. Thelen,* for Respondent, submitted a brief, and argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

Defendant has appealed from a judgment for damages arising out of an automobile collision between cars driven by himself and plaintiff. The accident occurred October 14, 1934, on a public highway between Babb and Glacier Park. It is undisputed that prior to that date a considerable amount of snow had fallen and as a result the highway, although travelable, had become slippery and rutted to some extent. Alternate freezing and thawing contributed to the condition.

Plaintiff was proceeding up grade around a curve, and defendant was driving down. There is some conflict as to the exact place of collision, but it seems clear that it happened on or at least near the end of a curve. The evidence offered in behalf of plaintiff substantiated the theory that he was traveling very slowly and, upon observing defendant's car coming down the

mountain grade, at what seemed too fast a speed for the condition of the road and such a grade, he pulled over to the right side of the road and stopped his car. Immediately thereafter defendant's car—being driven on plaintiff's side of the road—collided with plaintiff's and the injuries and damages resulted.

Defendant's version of the accident was that the snow on the road, coupled with alternate freezing and thawing temperatures, had caused traffic at and immediately preceding the point of the accident to form a single track down the center of the highway, and that this track had rutted the highway to such an extent—that is, formed the snow into such ruts—that it was impossible and impracticable to get out of them, due to the unusual and abnormal conditions existing. He contended that he was in the ruts, as also was plaintiff, and that upon meeting plaintiff, neither was able to stop or pull out to the side, and the collision unavoidably resulted.

Within approximately thirty minutes after the accident and while the injured occupants of the two cars were receiving first aid treatment at a nearby C. C. C. camp, plaintiff assertedly took two snapshot pictures of the wrecked cars still on the highway. The admission of these pictures in evidence forms the basis for two specifications of error.

It is the contention of defendant that no proper foundation was laid for the introduction in evidence of the pictures; that the evidence shows that the conditions at the time of the accident had been materially changed prior to the time the pictures were taken; that the pictures were apt to mislead and create false impressions upon the jury as to the condition of the road and the position of the cars at the time the accident occurred, and that the court erred in permitting the pictures to be shown to the jury.

The record shows that the pictures were taken by plaintiff, and were identified by him as well as by several other witnesses as portraying correct representations of the scene of the accident. All admitted that the pictures did not show the correct position of defendant's car, explaining that it had been moved to allow other cars to pass, but that plaintiff's car was in the

same position as when run into. The court, in admitting the pictures, specially instructed the jury that it should disregard any reference to the position of defendant's car as shown by the pictures, particularly Exhibit 1. The court further instructed that the pictures were admitted in evidence solely for the purpose of showing plaintiff's car and the condition of the road.

As to the condition of the road, plaintiff admitted that in the short time that had elapsed between the accident and the taking of the pictures, the sun had thawed the snow on the road somewhat. With this explanation, proof of the time between the accident and pictures, time of day of the accident, and weather conditions prevailing that day, the jury was certainly informed sufficiently to be able to view the pictures impartially and under no misapprehension or false impressions. Too, in the matter of the pictures, it was for it to believe or disbelieve the testimony of defendant's witnesses wherein they attempted to discredit the pictures showing that the cars had both been moved to a position where there was less snow and fewer ruts prior to the picture taking. Possibly the condition of the snow on the road was not precisely the same thirty minutes after the accident, but in all likelihood it was substantially unchanged. At any rate, the admission made by plaintiff that the snow had thawed some, coupled with a reasonable understanding as to the extent snow and ruts would change by melting in half an hour, constituted sufficient explanation to give the jury a correct understanding of the conditions existing at the time of the accident. (*McNair* v. *Berger,* 92 Mont. 441, 15 Pac. (2d) 834.) The court acted well within its discretion in admitting the pictures and did not err in so doing.

The remaining specifications of error are predicated on the court's refusal to give certain proposed instructions offered by defendant.

Defendant's proposed Instructions 10, 11 and 14 were in substance the same and to the effect that if the jury believed from the evidence that the character of the highway at the time of the accident was such that "it was impracticable

from the nature of the ground for the defendant to turn his automobile to the right of the beaten track, then he was not under any obligation to do so; that conditions as existing at the time and place may excuse his not doing so; and that he is not requried to turn to the right if it is impossible to do so considering the conditions existing at the time and place."

We believe the court correctly refused to give these instructions for two reasons: First, none of the three purported to take into consideration the speed with which defendant might be proceeding in ruts from which he could not extricate his automobile, the care with which he was driving under the prevailing road conditions, nor the control he had or ought to have had of his car. Second, the substance of the proposed instructions was given in other instructions, and the substance thereof was fully covered by Instructions 15 and 16 given by the court. Number 15 absolved defendant from blame and damages if the jury believed the accident to be an unavoidable one. Number 16 reads as follows: "You are instructed that if you believe from a fair preponderance of the evidence in this case, that at the time of the collision between the two automobiles the defendant was driving the automobile in his control in a careful and prudent manner, and at a rate of speed not greater than is reasonable and proper under the conditions existing at the point of operation, as set forth in these instructions and that by reason of the circumstances existing at the place of the collision, he could not avoid striking the car of the plaintiff, and that he should not be charged with the consequence under the circumstances of not having been able to have avoided the collision between the two automobiles, then you will find a verdict in favor of the defendant." It is readily apparent from a reading of this instruction that due allowance was made defendant for any impracticability or impossibility on his part to get out of the ruts and avoid striking plaintiff. Defendant sought exoneration because of snow-rutted road conditions. The jury was instructed by Instruction 16 that if defendant could not avoid striking the car of plaintiff because of the "circumstances existing at the place of the collision"—naturally including snow ruts—it was

its duty to find its verdict in favor of defendant. However, this instruction was necessarily qualified to the extent that the jury was charged with also taking into consideration the speed and control of defendant's car under the prevailing road conditions. The instruction connotated the very type of control required over a car mentioned in *McNair* v. *Berger,* supra, viz.: "the ability to avoid colliding with another who is using the highway and exercising proper care and caution on his own part."

Refused Instructions 7 and 15 were, respectively, as follows:

"The jury is instructed that the law requires that a person proceeding along the public highway with any vehicle must turn to the right and give one-half of the road to a vehicle which he meets. What is meant by one-half of the road is one-half of the track."

"The jury is instructed that in determining the line that would constitute the center of the highway, you are instructed that turning to the right of the center of the highway means to the right of the center of that part of the highway which is contiguous and at the same time open and in a reasonably safe and fit condition for travel by the ordinary modes. If the highway in question at the time of the accident had upon it a beaten traveled track with well defined and well marked limits or boundaries, the right of the center of the highway to one who was using the traveled track, in such an event would mean the right of the center of the track such person was, at that time, traveling."

In view of Instruction No. 9, given by the court, we are unable to see where defendant was prejudiced in any way by the court's action. In addition to other instructions given fully covering the ordinary obligation on the part of a driver to keep to the right, No. 9 presented the following qualification: "You are instructed that, where the whole breadth of the roadway is not worked the center of the worked part is the center of the highway. You are further instructed that in time of snow where there is a beaten track upon the highway the center of the beaten track is the center of the highway or road." Thus, by quotation of the refused instructions in full, and also the in-

118

.struction given, is demonstrated very clearly the correctness of the court's action in refusing to give instructions which would only have been repetitious of those in substance already given.

The instructions, considered as a whole, fully and fairly pre- ██ sented to the jury the law applicable to the case. That is all that was required (*Koppang* v. *Sevier*, 106 Mont. 79, 75 Pac. (2d) 790), because, as very aptly stated in *Kargman* v. *Carlo*, 85 N. J. L. 632, 90 Atl. 292, 295: "The ultimate test of the soundness of instructions is, not what the ingenuity of counsel can, at leisure, work out the instructions to mean, but how and in what sense, under the evidence before them, and the circumstances of the trial would ordinary men and jurors understand the instructions as a whole."

Judgment affirmed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES MORRIS, ANGSTMAN and ERICKSON concur.