NO. 94-482

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

BENJAMIN C. ROBERTS,

     Plaintiff/Appellant,

   -v-

PEGASUS GOLD CORPORATION,
a foreign corporation; O'KEEFE
DRILLING COMPANY, INC., a
Montana corporation; BEAL
MOUNTAIN MINING, INC., a
Montana corporation; and
DOES ONE through FIVE,

     Defendant/Respondents.



**FILED**

SEP 19 1995

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Third Judicial District,
               In and for the County of Deer Lodge,
               The Honorable Ted L. Mizner, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Richard J. Pyfer, Small, Hatch, Doubek & Pyfer,
          Helena, Montana

     For Respondent:

          Paul C. Meismer, Lucy T. France, Garlington, Lohn &
          Robinson, Missoula, Montana; Thomas E. Hattersley,
          David C. Dalthorp, Gough, Shanahan, Johnson &
          Waterman, Helena, Montana

                    Submitted on Briefs:  July 13, 1995

                        Decided: September 19, 1995

Filed:

Justice James C. Nelson delivered the Opinion of the Court.

This is an appeal from a decision of the Third Judicial District Court, Deer Lodge County, granting summary judgment in favor of respondents, O'Keefe Drilling Company, Inc. (O'Keefe) and Beal Mountain Mining, Inc. (BMMI). We affirm.

We restate the issues as follows:

I. Did the District Court err in ruling that the O'Keefe employees were not acting within their scope of employment in the alleged incident?

II. Did the District Court err in finding no genuine issue of material fact existed as to whether a BMMI employee or an O'Keefe employee caused Roberts' injury?

III. Did the District Court err in determining BMMI had no duty to provide security on the road where the incident occurred?

### Facts

BMMI owned and operated Beal Mountain Mine. BMMI hired, as independent contractors, O'Keefe Drilling Company and Dave Smith Contracting. Plaintiff, Benjamin C. Roberts (Roberts), was an employee of Dave Smith Contracting.

On October 9, 1990, at approximately 5:00 p.m., Roberts was hauling a load of clay on a public forest service road leading to the Beal Mountain Mine. Roberts observed a white flatbed truck with three people in the cab and toolboxes, oxygen and acetylene tanks mounted on the back. Roberts testified that, as the flatbed truck passed him, a loud explosion went off causing damage to his left ear. Roberts could not see what was thrown but he believed it

2

was a blasting cap. Testimony was also presented that it was possible, though unlikely, the noise was caused by the driver intentionally causing the truck to backfire. Roberts believed the flatbed truck was one he had seen a few days before which belonged to BMMI.

Roberts reported the incident to a coworker who contacted BMMI. BMMI investigated the incident and concluded, based on the description of the truck and the recorded time schedule, that the flatbed truck belonged to O'Keefe and not to BMMI.

On November 2, 1992, Roberts filed a complaint against O'Keefe, Pegasus Gold Corporation, and BMMI to recover damages as a result of injuries caused by either an employee of BMMI or an employee of O'Keefe. After briefing and oral arguments, the District Court granted summary judgment in favor of all three defendants on July 28, 1994. Roberts appeals the grant of summary judgment to BMMI and O'Keefe only.

## Discussion

We apply the same standard in reviewing a district court's grant of summary judgment as that used by the court under Rule 56(c), M.R.Civ.P.--"[s]ummary judgment is proper only when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law." Spain-Morrow Ranch, Inc., v. West (1994), 264 Mont. 441, 444, 872 P.2d 330, 331-32, citing Minnie v. City of Roundup (1993), 257 Mont. 429, 431, 849 P.2d 212, 214.

# I.

Did the District Court err in ruling that the O'Keefe employees were not acting within their scope of employment in the alleged incident?

Roberts admits the record supports the conclusion that an O'Keefe employee was responsible for the explosion. However, he reserves as a question for the jury whether in fact an O'Keefe employee or a BMMI employee caused the explosion. If the jury found an O'Keefe employee responsible, Roberts contends O'Keefe is liable for its employee's actions under the theory of respondeat superior.

Roberts refers to Maguire v. State (1992), 254 Mont. 178, 182, 835 P.2d 755, 758, where we restated respondeat superior imposes liability on an employer for wrongful acts of an employee committed within the scope of his employment. Roberts reasons O'Keefe's employees were in the course of employment at the time the incident occurred because they were in route in a company vehicle from their work place to their own personal vehicles. Roberts cites to Webster v. Mountain States Telephone and Telegraph Company (1939), 108 Mont. 188, 199, 89 P.2d 602, 605, where we said where "the work of an employee creates the necessity for travel, he is in the course of his employment, even though he is serving at the same time some purpose of his own."

The facts in Webster, however, involved negligent driving and the liability of the employer when the employee was driving in the course of employment. Webster, 89 P.2d at 605. In the case at

4

hand, the alleged injury did not result from the employee driving the vehicle but from intentionally throwing an explosive from the vehicle or causing the truck to backfire. Nothing in the record suggests the act of driving caused the injury to Roberts. Therefore, what we stated in Webster does not apply here.

Roberts further contends that this Court, in Lassabe v. Simmons Drilling, Inc. (1987), 228 Mont. 94, 743 P.2d 568, provided that employees may be considered in the course of employment while going to or coming from work when the employer provides transportation to the job site. Here, O'Keefe provided transportation for its employees to the job site.

Lassabe, though, was a workers' compensation case and it is recognized that the concept of "scope of employment" in those sorts of cases is broader than in the context of respondeat superior. Larson's treatise on workers' compensation law discusses what is meant by "course of employment" in the context of respondeat superior and workers' compensation.

> In the law of respondeat superior, the harmful force is always an act of the servant, or at least an omission which is the equivalent of an act. The inquiry is whether the performance of that act was in furtherance of the master's business. But in many work[er]'s compensation situations, the harmful force is not the employee's act, but something acting upon the employee.

1 Larson, Workmen's Compensation Law § 14.00, pp.4-1 to 4-2.

Moreover, under pre-1987 versions of the Workers' Compensation Act, we were required to liberally construe workers' compensation statutes in favor of the employee. See § 39-71-104, MCA (1985), and Grief v. Industrial Accident Fund (1939), 108 Mont. 519, 526,

5

93 P.2d 961, 963. Respondeat superior cases do not require such an interpretation. Therefore, Lassabe's interpretation of scope of employment does not control here.

O'Keefe correctly argues there must be some connection between the alleged tortious conduct and the employer's business to hold the employer liable. The act, if isolated, must not be imputable to the employer. Kornec v. Mike Horse Mining Co. (1947), 120 Mont. 1, 9, 180 P.2d 252, 256. We agree with the District Court's use of our analysis in Kornec. In Kornec, plaintiff was injured during a scuffle with an employee of defendant while on the job. The quarrel arose out of an ongoing confrontation between plaintiff and defendant's mining company. There were two different versions of the assault. One version was that the employee attacked plaintiff for threatening to disturb the mine. In that situation, the defendant would have benefited from the tort and would, therefore, be liable for the employee's action. Kornec, 180 P.2d at 256. It was a question of fact for the jury to determine whether the employee was acting in the course of his employment.

Here, it is Roberts' contention that the O'Keefe employees threw an explosive from the truck or intentionally caused the truck to backfire as Roberts passed. Accepting Roberts' interpretation of the facts, there is no genuine issue of material fact. The act of throwing the explosives, or intentionally causing the truck to backfire, was neither authorized by O'Keefe nor was it incidental to conduct authorized. The act did not benefit O'Keefe in any way. See Kornec, 180 P.2d at 256. Therefore, we conclude the District

6

Court did not err in ruling that the O'Keefe employees were not acting within their scope of employment in the alleged incident.

## II.

Did the District Court err in finding no genuine issue of **material** fact existed as to whether a BMMI employee or an O'Keefe employee caused Roberts' injury?

Roberts argues the record contains a genuine fact question as to who caused the explosion that resulted in his injury. The disputed issue, however, is not material given our holding in Issue I. Neither BMMI nor O'Keefe would be held liable for their respective employees' actions under these facts.

### III.

Did the District Court err in determining BMMI had no duty to provide security on the road where the incident occurred?

Roberts alleges BMMI maintained actual, voluntary control of the road between the mine site and BMMI's administrative offices. Roberts asserts BMMI monitored and controlled traffic on the roadway to such an extent that it assumed the responsibility of providing security for all road use. Thus, he argues BMMI is liable for the actions of O'Keefe's employees on a theory of negligent supervision of the road.

We agree with the District Court's findings that BMMI's control of the roadway was limited. BMMI provided a pilot car to escort chemical trucks and visitors to the mine site. Additionally, BMMI exercised control over the speed limit along the road solely to **minimize** dust as was its obligation to the Air

7

Quality Bureau.  There is no further evidence in the record to suggest BMMI assumed responsibilities in patrolling the roadway that would lead to an assumption of duty to provide security. Therefore, we conclude the District Court did not err in determining BMMI had no duty to provide security on the road where the incident occurred.

We affirm.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

September 19, 1995

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:


Richard J. Pyfer
Small, Hatch, Doubek & Pyfer
P.O. Box 236
Helena, MT 59624-0236

Paul C. Meismer, *Lucy T. France*
Attorney at Law
P.O. Box 7909
Missoula, MT 59807

Thomas E. Hattersley, *David C. Dalthorp*
Attorney at Law
P.O. Box 1715
Helena, MT 59624


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: *N. Gallagher*
Deputy