No. 82-211

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

SHARON K. VERSLAND, Individually,
as Personal Representative of the
Estate of BERT MARTIN VERSLAND, Deceased,
et al.,

                    Plaintiff,

    -vs-

CARON TRANSPORT,

                    Defendant.

---

ORIGINAL PROCEEDING:

FOR COUNSEL:

    For Plaintiff:

        Richard W. Anderson argued; Anderson, Edwards & Molloy,
        Billings, Montana: Donald Molloy argued, Billings,

    For Defendant:

        Herbert I. Pierce, III, argued, Crowley Law Firm,
        Billings, Montana

---

                    Submitted:    May 31, 1983
                    Decided:      October 21, 1983

Filed:    OCT 21 1983

                    _Ethel M. Harrison_
        _____
                    Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

The United States District Court for the District of Montana has certified this action to this Court for a determination of three issues.

The following facts were stipulated for certification. On October 7, 1980, Bert Martin Versland was driving a New Holland bale wagon in a northerly direction on Montana Highway 191. Near his home, approximatley eighteen miles north of Big Timber, a collision occurred between the bale wagon and the defendant's semi-truck driven by Richard Martineau. Bert Versland was killed in the collision. Sharon Versland, the plaintiff, witnessed part of the collision and then saw her husband's body at the scene.

At the time of his death, Bert Versland was married to Sharon Versland. He was the stepfather of Michelle Louise Jones and Laura Marie Korpela, Sharon Versland's minor children by prior marriages. The children were not adopted by the decedent but lived with him and were dependent upon him for support.

On November 25, 1980, Sharon Versland filed a complaint against defendant in United States District Court for the District of Montana. In the complaint and her more definite statement, she seeks relief in her own behalf, as personal representative of her husband's estate, and as custodian and next friend of the two minor children. In addition to a claim for her husband's wrongful death, Versland seeks to recover for the shock, fright, mental pain and suffering which she claims were caused by seeing part of the collision and then seeing her husband's body at the scene of the accident.

2

The defendant, Caron Transport, filed a motion seeking to dismiss Sharon Versland's claim for emotional shock and mental anguish on the ground that it fails to state a claim upon which relief can be granted. The defendant also challenges the right of the nonadopted minor stepchildren of Bert Versland to state a claim for the loss of consortium and support of Bert Versland.

The parties agree three issues materially affect the case and therefore the United States District Court for the District of Montana has requested this Court to accept jurisdiction and decide these issues of state law:

1. Whether under Montana law a spouse may recover for the emotional trauma caused by witnessing a collision which causes the infliction of death or injury of the other spouse;

2. Whether under Montana law a spouse may recover for the negligent infliction of emotional trauma caused by witnesssing a collision which causes the infliction of death or injury to the other spouse; and

3. Whether under Montana law the nonadopted minor stepchildren of a decedent may state a claim for the deprivation of the decedent's consortium and support when they had been received into decedent's family and were supported by the decedent as if he were the natural or adoptive father.

Counsel for the plaintiff does not address issue number one in either the brief or in oral argument. Counsel for defendant defines the first issue to mean that plaintiff is asking this Court to hold that there is strict liability in infliction of emotional distress cases. We are somewhat at a loss as to the precise meaning of the first issue; however, assuming defendant's interpretation is correct, this Court can find no rational basis, no overriding interest and no

3

existing authority for extending a blanket of strict liability for the infliction of such emotional distress.

Issue No. 2 asks whether a spouse may recover for the negligent infliction of emotional trauma caused by witnessing a collision which causes the infliction of death or injury to the other spouse. This issue has been addressed by many courts in many jurisdictions. Early courts denied recovery of damages for emotional trauma if there was no physical impact with the plaintiff. Mitchell v. Rochester Railway Co. (1896), 151 N.Y. 107, 45 N.E. 354. Later the impact rule was replaced with the "zone of danger" rule. Under this rule, a plaintiff could recover if he were located within the zone of defendant's negligent conduct and feared for his own safety. Amaya v. Home Ice, Fuel & Supply Co. (1963), 59 Cal.2d 295, 379 P.2d 513.

In Dillon v. Legg (1968), 68 Cal.2d 728, 441 P.2d 912, the California Supreme Court abandoned the zone of danger rule and allowed recovery for emotional trauma suffered by a mother who witnessed her daughter killed by a motorist as she crossed a street. Although the mother was not in physical danger, the court held it reasonably foreseeable that negligent operation of a motor vehicle that causes injury to a child will cause mental distress to a parent who witnesses the accident.

The Dillon court stated:

> "Since the chief element in determining whether defendant owes a duty or an obligation to plaintiff is the foreseeability of the risk, that factor will be of prime concern in every case. Because it is inherently intertwined with foreseeability such duty or obligation must necessarily be adjudicated only upon a case-by-case basis. We cannot now predetermine defendant's obligation in every situation by a fixed category; no immutable rule can establish the extent of that obligation for every circumstance

4

of the future. We can, however, define guidelines which will aid in the resolution of such an issue. . ." *Dillon*, 441 P.2d 912, 920.

In establishing guidelines, the California Supreme Court stated:

". . . [in] determining . . . whether defendant should reasonably foresee the injury to plaintiff, or, in other terminology, whether defendant owes plaintiff a duty of due care, the courts will take into account such factors as the following:

"(1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship." *Dillon*, 441 P.2d 912, 920.

Since *Dillon*, many courts have rejected the prior limitation of zone-of-physical-danger and instead have created a zone-of-psychic-danger limitation which is reflected in the first two elements of the *Dillon* test. The New York Court of Appeals recognized in 1961 that using the impact rule to bar all claims of psychic trauma absent actual physical impact was arbitrary. Battalla v. State (1961), 10 N.Y.2d 237, 176 N.E.2d 729. The court chose instead to rely upon competent medical proof and the jury's historic ability to weed out fraudulent claims. *Battalla*, 10 N.Y.2d at 242, 176 N.E.2d at 731-732. In another New York case, Lafferty v. Manhasset Medical Center Hospital (1980), 103 Misc.2d 98, 425 N.Y.S.2d 244, a woman was allowed recovery for emotional distress caused by witnessing the death of her mother-in-law resulting from the transfusion of mismatched blood. The court held that since the plaintiff's presence was actually

5

known to the hospital, the only reasonable circumscription of the extent of the duty owed to her was that of a reasonable zone of danger within which psychic trauma could be inflicted. As a result of this reasonably foreseeable danger, a duty arose on the part of the hospital owing directly to the daughter-in-law.

In 1979, the Pennsylvania Supreme Court held that where a mother witnessed a negligently driven automobile strike and kill her minor daughter, while not being in any physical danger herself, the mother could recover for her psychic injuries under the theory that such injuries would be reasonably foreseeable to any tortfeasor. Sinn v. Burd (1979), 486 Pa. 146, 404 A.2d 672.

In Barnhill v. Davis (Iowa 1981), 300 N.W.2d 104, the Iowa Supreme Court considered the traditional view, which conditioned recovery on the bystander's presence in the zone of danger but decided that the better view permitted recovery regardless of whether the plaintiff was in the zone of physical danger. Barnhill, 300 N.W.2d at 107.

The Dillon requirement of presence at the scene has been expanded in some jurisdictions, including California where a mother was allowed to recover when she witnessed her young son being pulled from defendant's pool and participated in the attempt to revive him. The child died three days later. The court concluded that, as a matter of law, it could not say that the injuries resulting from the pool owners' negligence were not still being experienced at the time the mother arrived on the scene. Nazaroff v. Superior Court in and for Cty. of Santa Cruz (1978), 80 Cal.App.3d 553, 145 Cal.Rptr. 657. See also, Landreth v. Reed (Tex.Civ.App. 1978), 570 S.W.2d 486; Grimsby v. Samson

6

(1975), 85 Wash.2d 52, 530 P.2d 291; Archibald v. Braverman (1969), 275 Cal.App.2d 253, 79 Cal.Rptr. 723.

The second Dillon guideline is "whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence." Dillon, 441 P.2d 912, 920.

This requirement of actual observance of the event has been expanded since Dillon to include sensory perception of the accident and not just strict observance of the event. Bliss v. Allentown Public Library (E.D. Pa. 1980), 497 F.Supp. 487; Corso v. Merrill (1979), 119 N.H. 647, 406 A.2d 300; and Krouse v. Graham (1977), 19 Cal.3d 59, 562 P.2d 1022.

It is clear that over the years since Dillon was handed down, the requirements of presence and observation have been expanded and the distinctions between the two elements have blurred. We find that if a plaintiff is required to experience actual sensory perception of the accident, the requirement of proximity is necessarily satisfied. Consequently, we hold that to recover in Montana for the negligent infliction of emotional distress the first element to be considered shall be as follows:

> Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous preception of the accident, as contrasted with learning of the accident from others after its occurrence.

The next element pertains to the degree of relationship between the plaintiff and the victim. Dillon requires that the plaintiff and victim be "closely related," as contrasted with the absence of any relationship or the presence of only a distant relationship. This requirement has also been

7

expanded by various jurisdictions in the years since Dillon. For example, Arizona, in Keck v. Jackson (1979), 122 Ariz. 114, 593 P.2d 668, interpreted this requirement as including "a person with whom the plaintiff has a close personal relationship, either by consanguinity or otherwise." Keck, 593 P.2d 668, 670. The Supreme Court of Hawaii held that the absence of a blood relationship between the victim and the plaintiff bystander would not foreclose recovery of damages for psychic injury, and the New York lower appellate court in Lafferty, supra, permitted a daughter-in-law to recover. We hold, however, that the guideline for the necessary relationship shall be the same as that of Dillon:

> Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.

The third element which we hold must be considered in an action for the negligent infliction of emotional distress is:

> Either death or serious physical injury to the victim must have occurred as a result of defendant's negligence.

Under the foreseeability test, supra, we find that it is reasonably foreseeable to a defendant that serious emotional distress to one party may arise from defendant's negligent acts inflicting serious bodily injury or death to a second party. We do not choose to limit recovery strictly to accidents wherein the victim dies. However, we do not intend that bystanders be allowed to recover even where there is severe emotional distress when the victim is not seriously injured. Whether the injury is sufficiently severe to support a claim for recovery will have to be decided on a case-by-case basis in the trial court.

We note that a number of jurisdictions still require that plaintiff bystander prove physical manifestations of the underlying emotional trauma. While required under Dillon, California abandoned this requirement in Molien v. Kaiser Foundation Hospitals (1980), 167 Cal.Rptr. 831, 616 P.2d 813. In Molien the court stated:

> "It supposedly serves to satisfy the cynic that the claim of emotional distress is genuine. Yet we perceive two significant difficulties with the scheme. First, the classification is both overinclusive and underinclusive when viewed in the light of its purported purpose of screening false claims. It is overinclusive in permitting recovery for emotional distress when the suffering accompanies or results in any physical injury whatever, no matter how trivial. . . More significantly, the classification is underinclusive because it mechanically denies court access to claims that may well be valid and could be proved if the plaintiffs were permitted to go to trial.
>
> "The second defect in the requirement of physical injury is that it encourages extravagant pleading and distorted testimony. Thus it has been urged that the law should provide a remedy for serious invasions of emotional tranquility, 'otherwise the tendency would be for the victim to exaggerate symptoms of sick headaches, nausea, insomnia, etc., to make out a technical basis of bodily injury, upon which to predicate a parasitic recovery for the more grievous disturbance, the mental and emotional distress she endured.' (Magruder, Mental and Emotional Disturbance in the Law of Torts (1936), 49 Harv.L.Rev. 1033, 1059; see also Anno. (1959) 64 A.L.R.2d 100, 117, fn. 18, 128 & f. 8 [suggesting that 'in most instances of severe mental disturbance some deleterious physical consequence can, with a little ingenuity, be found . . .,' and that characterization of an injury as physical or mental may depend on the ingenuity of counsel in framing the pleadings].)" Molien, 616 P.2d at 820.

The Court reasoned that the attempted distinction between physical and psychological injury merely clouds the

essential issue of proof: whether plaintiff suffered a serious and compensable injury. In addition, we find that in light of today's more advanced state of medical science, technology and testing techniques, the traditional limitation of requiring the existence of physical injury as a condition precedent to recovery for psychic injury is no longer necessary. While physical manifestation of emotional trauma may be considered by the trier of fact along with other evidence, physical manifestations will not be required to support a prima facie case for negligent infliction of emotional distress.

Defendant argues that acceptance of bystander recovery will not further justice and that arbitary rules will not shield the defendant from unlimited liability. We find defendant's arguments unconvicing. Defendant's arguments are essentially the same as those raised by the defendant in Dillon, and history has shown that Dillon did not provide a basis for unlimited liability, even in those jurisdictions which have relaxed Dillon's basic requirements. We do not state that defendant has unlimited liability in a circumstance such as the facts of this case. Indeed, we specifically hold that defendant has potential liability only for injuries to others which to defendant at the time were reasonably foreseeable.

In summary, we hold the following to be proper elements for the courts to apply when determining a claim for damages for the negligent infliction of emotional distress:

1. The shock must result from a direct emotional impact upon the plaintiff from the sensory and contemporaneous perception of the accident, as contrasted with learning of the accident from others after its occurrence.

10

2. The plaintiff and victim must be closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.

3. Either death or serious physical injury of the victim must have occurred as a result of the defendant's negligence.

Issue No. 3 asks whether the nonadopted minor stepchildren of decedent may state a claim for the deprivation of decedent's consortium and support. Plaintiff argues the basis for these damages is section 27-1-323, MCA: "[i]n every action under 27-1-512 and 27-1-513 such damages may be given as under all the circumstances of the case may be just," and section 27-1-513, MCA: "[w]hen the death of one person, not being a minor, is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death or, if such person be employed by another person who is responsible for his conduct, then also against such other person." (Emphasis added.)

Plaintiff contends decedent's nonadopted stepchildren are "heirs" within the meaning of section 27-1-513, MCA, and to exclude their claim would be contrary to public policy. Heirs are those persons who are entitled to the property of a decedent under the statutes of intestate succession. Section 72-1-103(18), MCA. A child may take from a decedent through intestate succession if the child is issue of the decedent. Section 72-2-203, MCA. Issue of a person means all his lineal descendants. Section 72-1-103(22), MCA. Thus, nonadopted stepchildren of a decedent are not heirs as defined by the intestacy statutes. As this Court stated in Swanson v. Champion International Corp. (Mont. 1982), 646 P.2d 1166, 1170, 39 St.Rep. 639, 643, ". . . the source of

11

the damages recoverable in a wrongful death action is personal to the survivors of the decedent. The damages are not those of the decedent, but of the heirs by reason of his death." As the stepchildren are not heirs, they are not entitled to bring a claim for the deprivation of decedent's consortium and support.

Plaintiff argues the Arkansas Supreme Court recognized stepchildren's claim for loss of consortium and support in Moon Distributors, Inc., v. White (1968), 245 Ark. 627, 434 S.W.2d 56. However, under Arkansas's wrongful death statute, beneficiaries of a wrongful death claim "are the surviving spouse of the deceased person, children, father and mother, brothers and sisters, persons standing in loco parentis to the deceased person, and persons to whom the deceased stood in loco parentis." Ark.Stat.Ann. Section 27-908. (Emphasis added.) Thus, the Arkansas wrongful death statute is drafted specifically to include stepchildren whereas the Montana wrongful death statute is not.

Plaintiff claims a stepparent who provides support to a stepchild becomes a "presumptive parent." Section 40-6-217, MCA. However, this section is not related to the wrongful death statute and only provides that "if he receives them into his family and supports them, it is presumed that he does so as a parent and, where such is the case, they are not liable to him for their support nor he to them for their services."

Lastly, plaintiff argues even if the stepchildren cannot recover under the wrongful death statute, they are entitled to bring a separate action for loss of consortium. In some jurisdictions a natural child may bring a cause of action for loss of consortium. See, Ferriter v. Daniel O'Connell's Sons, Inc. (Mass. 1980), 413 N.E.2d 690.

12

However, these cases deal only with natural children whereas the issue certified by the Federal District Court deals only with nonadopted stepchildren. Thus, these cases are not controlling.

We therefore hold that nonadopted minor stepchildren of a decedent cannot state a claim for the deprivation of decedent's consortium and support.

A copy of this opinion shall be mailed to the Clerk of the United States District Court for Montana, Billings Division.

<u>Chief Justice</u>

We concur:

<u>Justices</u>

<u>Honorable H. William Coder,</u>
District Judge, sitting in
place of Mr. Justice John
Conway Harrison

13