JUSTICE McDONOUGH
delivered the Opinion of the Court.
The State of Montana appeals a jury verdict in favor of Margaret Maguire, individually and as guardian of Mary Margretta Glover and from a judgment of the Second Judicial District Court, Silver Bow County. We affirm in part and reverse in part.
We address the following issues on appeal:
1. Whether the District Court erred in granting partial summary judgment and in directing a verdict that the State was liable for criminal conduct of an employee under Restatement (Second) of Agency § 214;
2. Whether the District Court erred in refusing the State’s offer of proof, based on Rule 408, M.R.Evid., that Mrs. Maguire acknowledged that Ms. Glover was receiving good care at the Montana Developmental Center and that she should not be moved;
3. Whether the District Court erred in refusing to instruct on the theories of agency and negligent hiring;
4. Whether the District Court erred in allowing Mrs. Maguire to maintain an action in tort for emotional distress; and
5. Whether the District Court erred in refusing to reduce the jury’s verdict.
*181 In 1988, Mary Margretta Glover (Glover) an autistic and severely retarded patient at Montana Developmental Center (MDC), was assaulted and raped by an MDC employee, Lloyd Dean Drummond. Ms. Glover, age 43, has resided at what is now MDC since 1979. In
1988, MDC assigned Lloyd Drummond the primary responsibility for caring for Ms. Glover. His duties included bathing and dressing Ms. Glover.
Margaret Maguire (Maguire), Ms. Glover’s mother and legal guardian, brought Ms. Glover home for weekend visits. During one of the visits, Ms. Glover laid flat on her back, spread her legs, and placed her knees up towards her shoulders. During another visit, Mrs. Maguire noticed Ms. Glover was gaining weight. Mrs. Maguire telephoned MDC personnel to question them about Ms. Glover’s weight gain. She also inquired as to whether or not Ms. Glover was having regular menses. She was informed that Ms. Glover had missed her menses, but that it was probably due to thorazine treatment. However, MDC staff members also noticed Ms. Glover’s weight gain and commented to the head nurse that they wished to be the first ones to tell Lloyd Drummond that he was going to be a father.
In November of 1988, a pregnancy test on Ms. Glover came back positive. Ms. Glover delivered the baby without incident in April of 1989. As Ms. Glover’s legal guardian, Mrs. Maguire had to make decisions regarding her daughter’s pregnancy. Fear that Ms. Glover’s autism and retardation might be congenital made a decision to carry the pregnancy to term difficult. Further, Mrs. Maguire was concerned for her daughter’s safety. As a devout Roman Catholic, making a decision to abort the pregnancy was also very difficult. Ultimately Mrs. Maguire decided to have the pregnancy carried to term. However, she faced another difficult decision in whether to raise the child herself or place the child in an adoptive home. In view of her advanced age, she finally decided to place the child with adoptive parents.
In December of 1988, Mrs. Maguire sought medical attention for stress and depression related to the rape and pregnancy of her daughter. Her physician, who previously treated Mrs. Maguire for depression and anxiety related problems, noted her stress had increased and that she had deteriorated “markedly.” She complained of trouble sleeping, nightmares, contemplation of suicide, and generally feeling run down. Mrs. Maguire’s visits to the doctor increased, and her condition did not begin to improve until April of 1989, but she continued to see a psychologist through 1990.
Our standard of review as to the verdict is whether there is *182 substantial credible evidence in the record to support the jury verdict. In reviewing conclusions of law, question of law, or legal components of ultimate facts, or mixed questions of law and fact, we will decide if the lower court’s determination as to law is correct. The scope of review of discretionary acts of the trial court is whether the trial court abused its discretion. Our review will be plenary. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 803 P.2d 601.
I
Whether the District Court erred in granting partial summary judgment and directing a verdict holding the State liable for the criminal conduct of its employee, based on Restatement (Second) of Agency, § 214.
The District Court granted partial summary judgment and directed a verdict in favor of Mrs. Maguire and Ms. Glover on the issue of liability. The District Court based its decision on Restatement (Second) of Agency § 214. Section 214 is an exception to the general rule of respondeat superior. We have not heretofore adopted this section. This section provides:
Failure of Principal to Perform Non-delegable Duty.
A master or other principal who is under a duty to provide protection for or to have care used to protect others or their property and who confides the performance or such duty to a servant or other person is subject to liability to such others for harm caused to them by the failure of such agent to perform the duty.
We have previously analyzed cases -under the respondeat superior doctrine based on Restatement (Second) of Agency § 228. Respondeat superior imposes liability on an employer for the wrongful acts of an employee which are committed within the scope of his employment. As we stated in Kornec v. Mike Horse Mining (1947), 120 Mont. 1, 8, 180 P.2d 252, 256:
The servant or agent must have been acting in the “course of his employment,” in “furtherance of his employer’s interest,” or “for the benefit of his master;” “in the scope of his employment,” etc. But a servant who acts entirely for his own benefit is generally held to be outside the scope of his employment and the master is relieved of liability. (Citation omitted.)
See also Lutz v. United States (9th Cir. 1982), 685 F.2d 1178.
A party may be held vicariously hable for the damages caused *183 by another on the theory of respondeat superior or may be held directly liable on the theory of negligent hiring and/or supervision. Normally, an employer would not be held liable for tortious acts of its employee performed outside the scope of employment. Hoover v. University of Chicago Hospitals (Ill. 1977), 366 N.E.2d 925, 929. Thus, under respondeat superior, the employer’s liability is derivative from the negligent acts of the employee acting within the scope of employment. Boykin v. District of Columbia (D.C.App. 1984), 484 A.2d 560, 561. It is clear this rape was outside the scope of Lloyd Drummond’s employment.
Other jurisdictions, under theories of vicarious liability, hold an employer liable for the tortious acts of its employees acting outside the scope of employment. These cases involve common carriers and innkeepers. In G.L. v. Kaiser Foundation Hospitals (1987), 88 Or.App. 528, 746 P.2d 731, 734, the Oregon Court of Appeals deferred to the legislature in declining to hold hospitals strictly hable for tortious acts of employees acting outside the scope of employment (sexual assault). The question of an employer’s vicarious liability for the tortious acts of its employees acting outside the scope of employment is a matter of first impression in Montana.
Both appellant and respondent cite cases from other jurisdictions which produce opposite results. MDC relies on Rabon v. Guardsmark, Inc. (4th Cir. 1978), 571 F.2d 1277. In Rabon, the Fourth Circuit held that neither South Carolina common law nor South Carolina statutes justify application of the non-delegable duty rule of § 214 to the employer of a security guard (rape). The Fourth Circuit found that South Carolina only recognized the non-delegable duty exception to the general rule of respondeat superior in cases involving common carriers. Rabon at 1280.
Mrs. Maguire relies on Stropes v. Heritage House Childrens Ctr. (Ind. 1989), 547 N.E.2d 244, for her analysis that Montana should adopt the non-delegable duty exception to the respondeat superior doctrine. Stropes involves a similar fact situation. In Stropes a severely retarded fourteen-year-old boy was raped by a nurse’s aide employed by Heritage House. The aide’s duties included feeding, bathing, and changing the child. The rape occurred after the aide entered the boy’s room to change his clothing and bedding. Stropes at 245.
The Indiana Supreme Court, in reviewing Indiana case law, found two cases which held employers hable for criminal acts of their employees, because the acts “originated in activities so closely as *184 sociated with the employment relationship as to fall within its scope.” Stropes at 247.
The Siropes court also distinguished Rabón. As noted above, the Fourth Circuit determined that South Carolina’s non-delegable duty doctrine only extended to common carriers. Stropes at 250-251. However, as Siropes pointed out, Indiana has identified principles underlying its adoption of the exception, and, in fact, has extended it to reach enterprises other than common carriers. Stropes at 252. The Indiana Supreme Court concluded that the relevant relationships embodied in the common carrier exception, and the rationales underlying it, were applicable to Heritage. Stropes at 253-254.
Montana follows the doctrine of respondeat superior as expounded in Kornec. We have not adopted the common carrier exception to that doctrine. However, we have accepted the concept of a non-delegable duty in a contractual relationship between a general contractor and an independent contractor. Ulmen v. Schwieger et al. (1932), 92 Mont. 331, 12 P.2d 856. Ulmen involved a highway contract. We concluded that there was a non-delegable duty based on the inherently dangerous and hazardous nature of the project to the public. Ulmen at 347, 12 P.2d at 859. In Ulmen this duty was extended to third parties.
Later, we held that a general contractor had a non-delegable duty to the employee of a subcontractor based on a statutory duty to maintain safety at the worksite. Stepanek v. Kober Const. (1981), 191 Mont. 430, 625 P.2d 51. Stepanek involved a construction injury after a fall from a scaffold. In Cash v. Otis Elevator (1984), 210 Mont. 319, 684 P.2d 1041, this Court adopted a higher standard of care for the owner of a premises with respect to operation of an elevator. We determined that an elevator performs the function of a common carrier and that the owner of the elevator had a non-delegable duty as to the safety of the elevator because elevators are inherently dangerous. Cash at 324, 684 P.2d at 1043.
In summary, we have limited application of the non-delegable duty exception to the respondeat superior doctrine to instances of safety where the subject matter is inherently dangerous. We decline to extend the exception to the facts here. There are a number of reasons for and against extending the liability of the employer, such as here, when an intentional tort is committed only because of or by virtue of the employment situation. The employer is better able to attempt to avoid such wrongs. The employer has the ability to minimize them, while the victim has no control over the situation. Such a burden is *185 incidental to running a business. However, such a major change to the respondeat superior doctrine is best left to the legislature.
Massachusetts declined to extend the non-delegable duty exception to group day care centers because it would constitute a significant extension of Massachusetts law. Worcester Ins. v. Fells Acres Day School (1990), 408 Mass. 393, 558 N.E.2d 958, 968. (Rape and indecent assault.) Likewise creating a major exception to the respondeat superior doctrine, by extending liability to a caretaker, would constitute a significant extension of Montana law. Without support of prior judicial decisions, such an extension of liability should come from the legislature. See Sandman v. Hagan (Iowa 1968), 154 N.W.2d 113, 118-119. We conclude that the District Court erred in its determination to apply § 214 of the Restatement (Second) of Agency to the facts here. We reverse the District Court on this issue. Inasmuch as we are reversing on the first issue, our discussion of the balance of the issues is advisory for the purpose of a second trial.
II
Whether the District Court erred in refusing the State’s offer of proof, based on Rule 408, M.R.Evid., that Mrs. Maguire acknowledged Ms. Glover was receiving good care at the Montana Developmental Center and that she should not be moved.
Rule 408, M.R.Evid., provides:
Compromise and offers to compromise.
Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.
Based on Rule 408, the District Court excluded testimony from defendant’s witness, Jennifer Pryor, that Mrs. Maguire did not want Ms. Glover moved from MDC. MDC cites the commissioners’ *186 comments to the Rule that parties should not try to immunize their evidence from being admissible by presenting it during negotiations. The third sentence of the Rule allows evidence which is otherwise discoverable.
MDC sought to introduce testimony that Mrs. Maguire did not want Ms. Glover moved from MDC because it was close to Butte and that she thought Ms. Glover was receiving good care at MDC. Moreover, evidence existed that Mrs. Maguire rejected an offer of alternative placement for Ms. Glover during settlement negotiations. Counsel for MDC admitted that placement outside of MDC was part of the proposed settlement.
Further, Mrs. Maguire testified on cross-examination that MDC was the best place she could find for her daughter and that she wanted to keep her close to Butte. Thus, proposed testimony by MDC was repetitive. We conclude the evidence does not fall within the exception offered by MDC in the commissioners’ comments. For the reasons stated above, we affirm the District Court on this issue.
Ill
Whether the District Court erred in refusing to instruct on the theories of agency and negligent hiring.
Because the District Court adopted the non-delegable duty exception to the respondeat superior doctrine, it refused MDC’s proposed instructions on negligent hiring and agency. We concluded above that the District Court erred in adopting the non-delegable duty exception to Montana’s respondeat superior doctrine. Thus, we reverse the District Court on this issue.
Section 53-20-142, MCA, provides in part:
Persons admitted to a residential facility for a period of habilitation shall enjoy the following rights:
(1) Residents have a right to dignity, privacy, and humane care...
MDC has a statutory duty to Ms. Glover not inconsistent with the theories of negligent hiring, negligent supervision, and agency. Thus it was error for the District Court to refuse instructions based on these theories.
IV
Whether the District Court erred in allowing Mrs. Maguire to maintain an action in tort for emotional distress.
*187 The District Court limited Mrs. Maguire’s recovery for emotional distress to those damages caused by being required to make the decisions regarding the pregnancy of Ms. Glover. The jury was instructed not to award damages for emotional distress as a result of Mrs. Maguire’s learning of her daughter’s rape and pregnancy. This latter instruction was correct. In the past we have allowed recovery to a third party for contemporaneous observance of an accident or event resulting in shock to the senses. Versland v. Caron Transport (1983), 206 Mont. 313, 671 P.2d 583.
In Versland we traced the history of case law from a denial of recovery for damages for emotional trauma if there was no physical impact to an expansion to the “zone of danger” rule. The “zone of danger” rule allows the plaintiff recovery if he or she were located within the zone of defendant’s negligent conduct and feared for his or her own safety. We abandoned this rule using the reasoning of the seminal case of Dillon v. Legg (1968), 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912. In Versland, we adopted guidelines derived from Dillon, and articulated a three part test for third party claims for negligent infliction of emotional distress:
1. The shock must result from a direct emotional impact upon the plaintiff from the sensory and contemporaneous perception of the accident, as contrasted with learning of the accident from others after its occurrence.
2. The plaintiff and victim must be closely related, as contrasted with absence of any relationship or the presence of only a distant relationship.
3. Either death or serious physical injury of the victim must have occurred as a result of the defendant’s negligence.
Wersland at 322, 671 P.2d 583.
Part (1) of this test is in line with, and an amplification of, prong 2(a) of Section 46 of the Restatement of Torts relative to intentional and reckless conduct. This is sometimes referred to as the tort of outrage. See Lund v. Caple (1984), 100 Wash.2d 739, 675 P.2d 226. Restatement (Second) of Torts § 46 provides:
(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.
(2) Where such conduct is directed at a third person, the actor is *188 subject to liability if he intentionally or recklessly causes severe emotional distress
(a) to a member of such person’s immediate family who is present at the time, whether or not such distress results in bodily harm, or
(b) to any other person who is present at the time, if such distress results in bodily harm.
The case before us fails to meet part one of the Versland three part test and part 2 of § 46 of the Restatement in that Mrs. Maguire, the plaintiff herein, was not present at the time of the conduct. She learned of the conduct from others. The policy behind the presence requirement is to limit the number of persons who may recover for emotional distress and to guarantee the genuineness of the claim. See Marlene F. v. Psychiatric Med. Clinic (Cal. 1989), 257 Cal.Rptr. 98, 770 P.2d 278, 285. J.J. Arguelles and Eagleson concurring.
The theory submitted to the jury was whether or not Mrs. Maguire may recover for damages for emotional distress for being required to make decisions regarding the pregnancy of her daughter; those decisions being whether or not the daughter should have an abortion and if not, to provide for the care or adoption of the child. No direct-relationship exists between any outrageous act and Mrs. Maguire. To find an independent cause of action here goes beyond the rationale and tests of the Dillon and Versland progeny and goes beyond the physical presence requirement.
We have allowed recovery for emotional distress absent physical injury in only limited circumstances. In Johnson v. Supersave Markets, Inc. (1984), 211 Mont. 465, 686 P.2d 209 and Niles v. Big Sky Eyewear (1989), 236 Mont. 455, 771 P.2d 114, we allowed recovery for emotional distress damages for false imprisonment in jail. In both Johnson and Niles the victim was not a third party.
A caveat to § 46 provides: “The Institute expresses no opinion as to whether there may not be other circumstances under which the actor may be subject to liability for the intentional or reckless infliction of emotional distress.” As Justice Arguelles points out, the caveat speaks to situations which may not mandate the presence requirement. Marlene F. at 105, 770 P.2d at 285, quoting § 46 com. 1, p. 79. In Marlene F the California Supreme Court held a mother of a child could state a claim for negligent infliction of emotional distress after a psychologist treating both the mother and child, sexually molested the child. Marlene F at 103, 770 P.2d at 283. The comb reasoned that *189 damages are recoverable when the defendant owes a duty of care to the plaintiff. The existence of the duty depends upon the foreseeability that severe emotional distress will result from the breach of that duty. Marlene F at 101-102, 770 P.2d at 281-282.
Justice Eagleson, in his concurring opinion in Marlene F, points out that the relationship between the psychotherapist and patient gives rise to a duty to refrain from conduct that foreseeably will harm the patient. He also points out that an earlier decision permitted a husband a cause of action for emotional distress after a doctor misdiagnosed his wife as having syphilis. The husband was not present at the diagnosis. Marlene F at 108, 770 P.2d at 288, citing Molien v. Kaiser Foundation Hospitals (1980), 167 Cal.Rptr. 831, 616 P.2d 813. In Molien the court reasoned that the doctor assumed a duty to the husband when he directed the wife to communicate the diagnosis to him, thus it was foreseeable to the doctor that a misdiagnosis would cause the husband emotional distress. Molien at 835, 616 P.2d at 817. In reality, the plaintiffs in Molien and Marlene F could be considered “direct victims” of the tortious conduct.
Relying on Marlene F, the California Supreme Court distinguished the bystander-witness cases of the Dillon progeny. In Christensen v. Superior Court (1991), 2 Cal.Rptr.2d 79, 91, 820 P.2d 181, 193, certain mortuaries and crematoria wrongfully mishandled the decedents’ remains. Despite failing to satisfy the presence requirement, family members were allowed standing to recover for negligent infliction of emotional distress. Christensen at 99, 820 P.2d at 201. The defendants assumed a duty to the close relatives of the decedents for whose benefit they were to provide services. Further, the court reasoned that the defendants “created a special relationship with the close family members obligating them to perform those services in a dignified and respectful manner.” Christensen at 91, 820 P.2d at 193.
We are faced with the question here whether the facts before us satisfy the causation and the foreseeability requirements when the presence requirement is not met. In our view, doing so here would increase the spiral of liability farther out than other jurisdictions have chosen to go. See H.L.O. by L.E.O. v. Hossle (Iowa 1986), 381 N.W.2d 641, 644-645; Nancy P. v. D’Amato (Mass. 1988), 401 Mass. 516, 517 N.E.2d 824, 828.
In the case before us, MDC did not assume a duty towards Mrs. Maguire. The existence of a duty of care depends upon the foreseeability of the risk and upon a weighing of policy considerations for and against the imposition of liability. See Slaughter v. Legal *190 Process and Courier Service (1984), 162 Cal.App.3d 1236, 1249, 209 Cal.Rptr. 189, 196. The facts before us are not sufficiently similar to the duty the doctor assumed in Molien by instructing the wife to inform her husband about the diagnosis. Nor is it analogous to the special relationship created between the psychotherapist and patient in Marlene F. The fact situation in Christensen comes the closest to the facts before us. However, while the morticians and crematoria assumed a duty to the close relatives (of the decedents) for whose benefit they were performing funeral and related services, MDC did not assume such a similar duty to Mrs. Maguire. There was no close connection between the extreme and outrageous acts and Mrs. Maguire’s injury. She is neither a “direct victim,” nor was she present at the time of conduct, nor a victim under specific special parasitic circumstances.
We therefore decline to extend liability to allow Mrs. Maguire to recover for either negligent infliction of severe emotional distress or intentional infliction of severe emotional distress. We reverse the District Court on this issue.
V
Whether the District Court erred in refusing to treat the separate recoveries as a single claim of damages under § 2-9-108, MCA.
Under § 2-9-108, MCA, the legislature imposed a $750,000 limit on each claim against the State. Section 2-9-108, MCA (1991) (temporary), states in part:
(1) Neither the state, a county, municipality, taxing district, nor any other political subdivision of the state is liable in tort action for damages suffered as a result of an act or omission of an officer, agent, or employee of that entity in excess of $750,000 for each claim and $1.5 million for each occurrence.
The rape and subsequent pregnancy were the subjects of Mrs. Maguire’s original complaint. During the trial, Drummond admitted to raping Ms. Glover on two additional occasions.
Under § 2-9-108, MCA, a party is entitled to $750,000 for each claim. We agree with the District Court that each rape was a separate wrongful act. We conclude that the District Court did not err in refusing to treat the recoveries as based on a single claim.
MDC also contends that the verdict forms were improper. The jury did not separate its damage award among the separate claims. The *191 District Court found that MDC raised the limitation of § 2-9-108, MCA, as a defense in its amended answer and jury demand. Further, the District Court found that it was MDC’s responsibility to present a verdict form which would allow the jury to apportion its damage award applying § 2-9-108, MCA. We agree with the District Court that the responsibility rested with MDC to present separate verdict forms; we therefore affirm the District Court on this issue.
For the reasons stated above, we affirm in part and reverse in part and remand to the District Court for proceedings not inconsistent with this opinion.
CHIEF JUSTICE TURNAGE and JUSTICES GRAY and WEBER concur.